UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RYAN HOFFMASTER,

               Plaintiff,

    v.

RENAISSANCE EQUITY HOLDINGS LLC,

               Defendant.

Case No. 16 Civ. 01934 (BMC)(VMS)

**SETTLEMENT AGREEMENT**

WHEREAS, the above-captioned Plaintiff ("Plaintiff") filed a Complaint on April 20, 2016 against the above-captioned Defendant ("Defendant") in the above-captioned action (the "Action");

WHEREAS, in the Complaint Plaintiff alleged, among other things, that Defendant discriminated against Plaintiff on the basis of disability in violation of the federal Fair Housing Act and on the basis of disability and source of income in violation of the New York City Human Rights Law;

WHEREAS, Defendant denies the allegations of wrongdoing and liability as set forth in the Complaint, and by entering into this Agreement does not intend to admit, and does not admit, the same;

WHEREAS, Defendant maintains that it has complied and will continue to comply with the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* and the New York City Human Rights Law, New York City Administrative Code § 8-107;

WHEREAS, Plaintiff and Defendant wish voluntarily to resolve the claims raised by Plaintiff in the Complaint, according to the terms set forth in this Settlement Agreement ("Agreement"), as a compromise to avoid the cost and uncertainty of litigation; and

WHEREAS, Plaintiff and Defendant have voluntarily agreed to the terms of this Agreement and jointly request that it be so-ordered by the Court, as indicated by the signatures appearing below:

**IT IS HEREBY AGREED,** by and between Plaintiff and Defendant, that:

I.      **TERM AND SCOPE OF AGREEMENT**

1.      The terms of this Agreement take effect only once the Court so-orders this Agreement and, except as otherwise specified herein, shall continue for a period of three years from the date upon which the Agreement is so-ordered by the Court (such three-year period, the "Term" of this Agreement).

2.      All obligations under this Agreement, unless otherwise specified, commence within thirty (30) days from the date the Court so-orders this Agreement.

3.      When the term "Flatbush Gardens" is used in this Agreement, it shall refer to Defendant's residential rental housing complex comprising approximately 59 buildings and located in Brooklyn, New York.

II.     **FAIR HOUSING POLICIES AND PRACTICES**

4.      Defendant agrees to adopt an equal housing opportunity policy substantially in the form annexed hereto as Exhibit A (the "Policy"). Defendant shall distribute the Policy to its principal owners, employees, and agents who work at the leasing office for Flatbush Gardens and who have contact, by telephone, e-mail, messages transmitted to Defendant through the Flatbush Gardens website, or in-person, with current tenants of Flatbush Gardens or members of the

public inquiring about apartments for rent in Flatbush Gardens regarding the leasing of apartments, including showing apartments, providing information about apartments for rent, and deciding whether to accept or deny rental applications for Flatbush Gardens. Defendant agrees that it will obtain a signature from each such person upon receipt of the Policy, in the form of Exhibit B to this Agreement.

5. Throughout the Term of the Agreement, Defendant agrees to distribute the Policy to each newly hired or retained employee or agent described in the preceding paragraph within thirty (30) days of the hire or retention of such person. Defendant agrees that it will obtain a signature from each such person upon receipt of the Policy, in the form of Exhibit B to this Agreement.

6. Defendant agrees that it will not take any action that would retaliate against or interfere with Plaintiff's exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, rights guaranteed by the federal Fair Housing Act and state and local fair housing laws, including taking any action that would retaliate against Plaintiff as a result of his bringing this litigation. Notwithstanding the specified Term of this Agreement, Defendant's obligations under this Paragraph 6 of the Agreement shall survive for so long as Plaintiff continues to reside lawfully in the Apartment furnished to him pursuant to Paragraph 20 of this Agreement (the "Tenancy Period"), and for a period of ten years after the termination of the Tenancy Period.

7. Defendant agrees that it will modify its existing application requirements to provide that: (a) an applicant seeking to rent an apartment at Flatbush Gardens who receives a public rental housing subsidy or voucher covering 100% of the monthly rental price at which such apartment is offered for lease (each such applicant a "100% Subsidy Applicant") will not be

required to establish any minimum income in excess of the housing subsidy or voucher with which the applicant intends to pay the rent; and (b) an applicant seeking to rent an apartment at Flatbush Gardens who is eligible to receive a public rental housing subsidy or voucher covering less than 100% of the monthly rental price at which such apartment is offered for lease will be required to demonstrate only that he or she has a minimum annual income, from sources other than his or her public rental housing subsidy or voucher, in the amount of forty times the percentage share of the monthly rental price that will not be covered by the applicant's rental housing subsidy or voucher. Notwithstanding the specified Term of this Agreement, Defendant's obligations under this Paragraph 7 of the Agreement shall survive for a period of five years from the date upon which the Agreement is so-ordered by the Court.

8.    Defendant agrees that it will modify its existing application requirements to provide that Defendant will not deny the application of any 100% Subsidy Applicant on the basis of failure to satisfy credit criteria for rental applications at Flatbush Gardens. Notwithstanding the specified Term of this Agreement, Defendant's obligations under this Paragraph 8 of the Agreement shall survive for a period of five years from the date upon which the Agreement is so-ordered by the Court.

9.    Defendant agrees to post and display a Housing and Urban Development (HUD) fair housing poster, HUD Form 928.1, and a New York City Commission on Human Rights Fair Housing Poster, both attached as Exhibit C, at each office of Defendant that handles the leasing of residential apartments at Flatbush Gardens.

10.    Defendant agrees to include, at its sole election, either (a) a fair housing logo in the form annexed hereto as Exhibit D (not to scale), and/or (b) the phrase "Equal Housing Opportunity," in all rental advertisements and promotional materials utilized by the Defendant

for purposes of advertising rental apartments made available for leasing in Flatbush Gardens, including on the website for Flatbush Gardens (the "Flatbush Gardens Website"). Defendant agrees that it will continue to post on the Flatbush Gardens Website at least as much information concerning the availability of units for rent in the Flatbush Gardens complex, including information concerning the number of bedrooms and the rental pricing for available rental unit, as it currently posts on the Flatbush Gardens Website as of the date of execution of this Agreement.

11.     Defendant agrees to include the following sentences in a visible and legible manner on its Flatbush Gardens rental application forms:

> Our company is committed to equal housing opportunity. We do not discriminate on the basis of race, color, national origin, religion, sex, familial status, disability, age, marital status, military status, sexual orientation, gender identity, lawful source of income, alienage/citizenship status, domestic partnership status, lawful occupation, and any other characteristics protected by law.

12.     Defendant agrees to amend its rental application forms for the Flatbush Gardens complex to provide a space for applicants to indicate any claimed additional sources of income for paying rent at Flatbush Gardens, such as housing subsidies or vouchers. Notwithstanding the specified Term of this Agreement, Defendant's obligations under this Paragraph 12 of the Agreement shall survive for a period of five years from the date upon which the Agreement is so-ordered by the Court.

## III.     FAIR HOUSING TRAINING

13.     Within ninety (90) days after the Court so-orders this Agreement, Defendant agrees to conduct a training session for its employees and agents involved in the leasing of rental apartments at Flatbush Gardens, as described in Paragraph 4, lasting at least three (3) hours, to be conducted at an accessible location in New York City to be designated by Defendant. At Defendant's sole election, the training session shall be conducted either by (1) Kevin Cremin of

MFY Legal Services; or by (2) Scott Moore, Esq., of the law firm of Baird Holm LLP.

Defendant agrees to make commercially reasonable efforts to ensure that each of its employees and agents described in Paragraph 4 attends the training session; provided, however, that the failure of one or more such employees or agents to attend the training session due to illness, business travel, or other unforeseen or unavoidable scheduling conflicts shall not constitute a breach of this Agreement. Defendant shall pay the reasonable costs associated with the training, including the location, materials distributed at the training, reasonable travel costs for the trainer, and a fee of (1) $2,000 for the trainer, in the event that Defendant elects Mr. Cremin as the trainer; or (2) $4,000 for the trainer, in the event that Defendant elects Mr. Moore as the trainer. Plaintiff shall not receive any remuneration from the trainer in connection with his engagement to provide training to Defendant's employees. The training session referenced in this Paragraph shall include information about federal, state, and local fair housing laws as they relate to all aspects of the renting of apartments, as well as instruction on the terms of the Agreement. The individuals trained pursuant to this Paragraph shall verify their attendance at the training in writing.

14. Defendants agree to conduct a second training session as described in Paragraph 13 at least one time during the third year following the date the Agreement is so-ordered by the Court.

15. If, during the Term of this Agreement, the trainer elected by Defendant pursuant to Paragraph 13 is no longer available to provide the training, then Defendant agrees to notify Plaintiff's counsel in writing and designate an alternative trainer subject to approval by Plaintiff's counsel, which approval will not, provided the trainer is experienced and qualified to

provide in-person training for rental housing providers on fair housing laws, unreasonably be withheld.

## IV.   RECORDKEEPING PROVISIONS

16.   Defendants shall exercise best efforts to maintain the following records electronically and/or in paper form during the Term of the Agreement:

    a.    Signed copies of Exhibit B;

    b.    Copies of blank rental application forms referenced in Paragraphs 11 and 12;

    c.    Copies of completed application forms for rental applications that are submitted to Defendant by applicants seeking to rent an apartment at Flatbush Gardens, along with records (maintained either directly or through a third-party service provider) reflecting whether applications to rent an apartment at Flatbush Gardens are accepted or denied, and the reasons for the denial; and

    d.    Attendance verifications signed by each trained individual that indicate the date and location of each training session conducted pursuant to Paragraphs 13 and 14 of this Agreement and include the name and job title or position of each person who attended each session.

## V.   MONETARY RELIEF

17.   Defendant agrees that it will pay Plaintiff and his attorneys, Housing Works, Inc. and Emery Celli Brinckerhoff & Abady LLP ("ECBA"), the total sum of One Hundred Five Thousand Dollars ($105,000.00) in full and final settlement of all of Plaintiff's claims including, but not limited to, alleged damages of any kind (including without limitation all compensatory and punitive damages, attorneys' fees, and costs) (the "Settlement Amount"). The Settlement Amount shall be made payable to "Emery Celli Brinckerhoff & Abady LLP as attorneys for Ryan Hoffmaster." Defendant shall make payment of the Settlement Amount by wire transfer to an account designated by ECBA, pursuant to wire-transfer instructions to be provided by

Plaintiff's counsel concurrently with the execution of this Agreement, within ten (10) business days after the date on which the Court so-orders this Agreement.

## VI.  RENT-STABILIZED APARTMENT

18.   Within 30 days after the date the Court so-orders this Agreement, Defendant shall provide Plaintiff with a proposed one-year lease for a one-bedroom apartment at Flatbush Gardens of substantially the same standard as other apartments offered for rent at Flatbush Gardens that have been renovated since Defendant's acquisition of Flatbush Gardens, at a monthly rental price of $1,295, with all utilities included.  Defendant shall permit Plaintiff to inspect the offered unit prior to executing the lease.  If Plaintiff does not accept the apartment offered by Defendant after inspecting it, then Defendant shall offer Plaintiff a second one-bedroom apartment at Flatbush Gardens on the same terms, and if Plaintiff does not accept the second apartment, Defendant will offer a third such apartment.  If Plaintiff does not accept any of the apartments offered to him, then Defendant shall have no further obligation under this Agreement to offer an apartment to Plaintiff for rental in accordance with the terms of this Agreement.  If Plaintiff accepts one of the apartments offered to him (such accepted apartment hereinafter referred to as the "Apartment") and the Apartment is subject to a maximum legal rent pursuant to the rent-stabilization laws of New York City, as established by the New York City Division of Housing and Community Renewal, in excess of $1,295 per month, then the proposed lease for the Apartment shall designate that it is being leased pursuant to a preferential rent for the duration of Plaintiff's tenancy (such that the permissible increase in the monthly rent upon Plaintiff's first renewal of the lease shall be calculated based on the $1,295 preferential rent amount, and each future permissible increase in the monthly rent upon any further renewals of the lease shall be calculated based on the rent amount for the preceding renewal term).

Defendant agrees to take all commercially reasonable steps to cooperate with Plaintiff in his application to the New York City HIV/AIDS Services Administration ("HASA") to utilize his subsidy at Flatbush Gardens, including providing all requisite paperwork. In the event that HASA declines to approve the Apartment for receipt of a housing subsidy to cover 100% of Plaintiff's rent, then Defendant shall have no further obligation to make any apartment available to Plaintiff pursuant to this Paragraph.

19.     Notwithstanding the specified Term of this Agreement, Defendant's obligations under Paragraph 18 of this Agreement shall survive for so long as Plaintiff continues to reside lawfully in the Apartment furnished to him pursuant to Paragraph 18 of this Agreement.

## VII.    DISMISSAL OF COMPLAINT

20.     (a) Concurrently with the execution of this Agreement, Plaintiff shall deliver to counsel for Defendant a signed Stipulation of Dismissal, in the form annexed hereto as Exhibit E, providing for dismissal of the Action with prejudice (the "Stipulation of Dismissal"). Counsel for Defendant agree to hold the Stipulation of Dismissal in escrow pending notification by Plaintiff's counsel that payment of the Settlement Account has cleared into the account designated in Paragraph 17 of this Agreement. Upon receipt of such notification, counsel for Defendant will file the Stipulation of Dismissal with the Court. Counsel for Plaintiff agree that they will notify counsel for Defendant promptly of the receipt of the Settlement Amount into the account designated in Paragraph 17 of this Agreement. If counsel for Plaintiff fail to notify counsel for Defendant of the receipt of the Settlement Amount within ten (10) business days after Defendant causes the Settlement Amount to be paid into the account designated in Paragraph 17 of this Agreement, then counsel for Defendant may, upon two (2) business days' notice to Plaintiff, proceed to file the Stipulation of Dismissal with the Court unless counsel for

Plaintiff provide documentation evidencing that the Settlement Amount has not cleared into the account designated in Paragraph 17 of this Agreement.

(b) Notwithstanding the dismissal of the Action with prejudice pursuant to the filed Stipulation of Dismissal, the Court shall retain jurisdiction over this action during the Term of this Agreement for the sole purpose of enforcing compliance with the terms of this Agreement.

(c) If this Agreement is terminated for any reason before payment of the Settlement Amount is made, the Stipulation of Dismissal will become null and void and will not be filed.

## VIII. RELEASES

21.      In exchange for Defendant's agreement to the terms set forth in this Agreement, Plaintiff hereby completely, fully, finally, and forever releases, remises, acquits, and discharges with prejudice, subject to enforcement of the terms of this Agreement in accordance with the last clause of this Paragraph, Defendant and all of its employees, parents, current and former owners, shareholders, members, principals, managers, administrators, agents, trustees, board members, insurers, bond holders, attorneys, subsidiaries and affiliated entities of, from, and for any and all manner of liabilities, claims, actions, causes of action, obligations, or rights of action at law or in equity, of any kind or nature whatsoever, arising from the beginning of time through the date the Agreement is so-ordered by the Court (hereinafter the "Plaintiff's Released Claims").  For the avoidance of doubt, the Plaintiff's Released Claims include all claims (1) whether disclosed or undisclosed, anticipated or unanticipated, known or unknown, suspected or unsuspected, accrued or unaccrued, matured or not matured, perfected or not perfected, choate or inchoate, liquidated or not liquidated, fixed or contingent, ripened or unripened, (2) whether at law or in equity, whether based on or arising under state, local, foreign, federal, statutory, regulatory, common, or other law or rule and upon any legal theory, and (3) whether asserted directly, indirectly,

derivatively, or otherwise; provided, however, that the Plaintiff's Released Claims shall not include any claims to enforce any provision of this Agreement.

22.     In exchange for Plaintiff's agreement to the terms set forth in this Agreement, Defendant hereby completely, fully, finally, and forever releases, remises, acquits, and discharges with prejudice, subject to enforcement of the terms of this Agreement in accordance with the last clause of this Paragraph, Plaintiff and all of his employees, parents, current and former owners, shareholders, members, principals, managers, administrators, agents, trustees, board members, insurers, bond holders, attorneys, subsidiaries and affiliated entities of, from, and for any and all manner of liabilities, claims, actions, causes of action, obligations, or rights of action at law or in equity, of any kind or nature whatsoever, arising from the beginning of time through the date the Agreement is so-ordered by the Court (hereinafter the "Defendant's Released Claims").  For the avoidance of doubt, the Defendant's Released Claims include all claims (1) whether disclosed or undisclosed, anticipated or unanticipated, known or unknown, suspected or unsuspected, accrued or unaccrued, matured or not matured, perfected or not perfected, choate or inchoate, liquidated or not liquidated, fixed or contingent, ripened or unripened, (2) whether at law or in equity, whether based on or arising under state, local, foreign, federal, statutory, regulatory, common, or other law or rule and upon any legal theory, and (3) whether asserted directly, indirectly, derivatively, or otherwise; provided, however, that the Defendant's Released Claims shall not include any claims to enforce any provision of this Agreement.

## IX.    ADMINISTRATION OF AGREEMENT

23.    The United States District Court for the Eastern District of New York shall retain jurisdiction during the Term of this Agreement to enforce the terms of this Agreement upon the filing of an appropriate motion by either party.

24.    This Agreement shall be deemed to have been jointly drafted, and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

25.    The parties agree that neither they, nor anyone acting on their behalf or at their direction, shall issue any press release or seek any press or media coverage for thirty (30) days after the date the Court so-orders this Agreement (the "Initial Period"). The parties further agree that during this same time period, neither they, nor anyone acting on their behalf or at their direction, shall respond to any inquiries or make any statements regarding this Agreement (including but not limited to any statements made "off the record," "on background," or "not for attribution") to any person or entity that is not a party to this Action (or their respective counsel), and further, that neither they, nor anyone acting on their behalf or at their direction, shall make any statements regarding the Agreement on their websites. The parties agree to instruct their respective counsel to act in compliance with the terms of this paragraph. The parties further agree that, following the conclusion of the Initial Period, neither they, nor anyone acting on their behalf or at their direction, shall issue any press release or seek any press or media coverage regarding this Agreement. It is agreed, however, that if, after the Initial Period, any of the parties or their counsel is contacted by a member of the press, nothing in this Agreement shall be deemed to preclude the parties from discussing the Agreement with such member of the press in response to such request.

## X.    SEVERABILITY

26.    If any provision of this Agreement is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Agreement shall endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision shall materially affect the intent of this Agreement.  The parties to this Agreement shall consult and use their best efforts to agree upon a valid and enforceable provision that shall be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Agreement.

## XI.    MISCELLANEOUS

27.    This Agreement contains all of the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Agreement regarding the subject matter of the instant proceeding shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.

28.    The parties expressly represent and warrant, through the undersigned counsel, that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys, and that they have executed this Agreement voluntarily, without duress, coercion or undue influence.

29.    This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original. For purposes of executing this Agreement, a document signed and transmitted by facsimile or email shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

**AGREED TO BY THE PARTIES:**

Dated: _October 5_, 2016                    Dated: _____, 2016

EMERY CELLI BRINCKERHOFF &              GIBSON, DUNN & CRUTCHER LLP
ABADY LLP

By: _Diane L. Houk_                          By: _____
     DIANE L. HOUK                          RANDY M. MASTRO
     600 Fifth Avenue, 10th Floor           JENNIFER H. REARDEN
     New York, NY 10020                     GABRIEL HERRMANN
                                             200 Park Avenue
HOUSING WORKS, INC.                         New York, NY 10166

By: _Armen H. Merj_ -                       *Attorneys for Defendant*
     ARMEN H. MERJIAN
     GEOFFREY WERTIME
     81 Willoughby Street, 5th Floor
     Brooklyn, NY 11201

*Attorneys for Plaintiff*


It is so ORDERED this _____ day of _____, 2016.


_____
HON. BRIAN M. COGAN
UNITED STATES DISTRICT JUDGE

**AGREED TO BY THE PARTIES:**

Dated: _____, 2016

EMERY CELLI BRINCKERHOFF &
ABADY LLP

By: _____
      DIANE L. HOUK
      600 Fifth Avenue, 10th Floor
      New York, NY 10020

HOUSING WORKS, INC.


By: _____
      ARMEN H. MERJIAN
      GEOFFREY WERTIME
      81 Willoughby Street, 5th Floor
      Brooklyn, NY 11201

*Attorneys for Plaintiff*


Dated: 10/05/16 , 2016

GIBSON, DUNN & CRUTCHER LLP


By: _____
RANDY M. MASTRO
JENNIFER H. REARDEN
GABRIEL HERRMANN
200 Park Avenue
New York, NY 10166

*Attorneys for Defendant*


It is so ORDERED this _____ day of _____, 2016.



_____
HON. BRIAN M. COGAN
UNITED STATES DISTRICT JUDGE

<u>**EXHIBIT A**</u>

**EQUAL HOUSING OPPORTUNITY POLICY**

Renaissance Equity Holdings LLC is committed to equal housing opportunity at Flatbush Gardens Apartments. Consistent with this policy, you must not do any of the following during the course of your work for our companies:

1. Refuse to show, refuse to negotiate for the rental of, refuse to rent, or otherwise make unavailable or deny, an apartment to any person because of race, color, religion, sex, familial status, national origin, disability, lawful source of income (including SSI, SSD, Section 8, HASA and other rental vouchers, housing subsidies, government programs, or public benefits), marital status, domestic partnership status, age, sexual orientation, alienage or citizenship status, lawful occupation, or military status (each is a "prohibited basis");

2. Discriminate against any person in the terms, conditions or privileges of renting an apartment or in providing services or facilities in connection with renting an apartment because of a prohibited basis;

3. Make any verbal or written statement, including advertising, with respect to the rental of an apartment that indicates any preference, limitation, or discrimination concerning a prohibited basis;

4. Represent to any person because of a prohibited basis that any apartment is not available for inspection or rental when such apartment is in fact so available, including refusing to identify or show apartments that are available to rent; or

5. Steer any person to or away from certain rental buildings or complexes because of a prohibited basis.

Any action you take because of a prohibited basis that has the effect of making housing unavailable to persons protected under these laws constitutes a violation of federal, state, and local laws. You should understand that any violation of this Equal Housing Opportunity Policy will lead to discipline, up to and including termination of your work with our company.

## EXHIBIT B

## ACKNOWLEDGMENT AND AGREEMENT

I acknowledge that I have received and read the Equal Housing Opportunity Policy for Renaissance Equity Holdings LLC and its subsidiaries. I agree to comply with the terms of the Policy and with all federal, state, and local housing discrimination laws.

_____
DATE

_____
EMPLOYEE/AGENT NAME (PRINT)

_____
EMPLOYEE/AGENT SIGNATURE

_____
JOB TITLE

# EXHIBIT C

U. S. Department of Housing and Urban Development





**EQUAL HOUSING OPPORTUNITY**

**We Do Business in Accordance With the Federal Fair Housing Law**

(The Fair Housing Amendments Act of 1988)

## It is Illegal to Discriminate Against Any Person Because of Race, Color, Religion, Sex, Handicap, Familial Status, or National Origin

In the sale or rental of housing or residential lots

In the provision of real estate brokerage services

In advertising the sale or rental of housing

In the appraisal of housing

In the financing of housing

Blockbusting is also illegal

---

Anyone who feels he or she has been discriminated against may file a complaint of housing discrimination:
    1-800-669-9777 (Toll Free)
    1-800-927-9275 (TTY)
    www.hud.gov/fairhousing

U.S. Department of Housing and Urban Development
Assistant Secretary for Fair Housing and Equal Opportunity
Washington, D.C. 20410

---

Previous editions are obsolete        form HUD-928.1 (8/2011)



# HOUSING DISCRIMINATION IS AGAINST THE LAW!

FAIR HOUSING IS A HUMAN RIGHT PROTECTED BY THE NEW YORK CITY HUMAN RIGHTS LAW.





CCHR Photo Archive

UNDER THE NEW YORK CITY HUMAN RIGHTS LAW, YOU CANNOT BE DENIED HOUSING BECAUSE OF YOUR ACTUAL OR PERCEIVED RACE, CREED, COLOR, NATIONAL ORIGIN, AGE, DISABILITY, GENDER (INCLUDING GENDER IDENTITY AND SEXUAL HARASSMENT), SEXUAL ORIENTATION, MARITAL STATUS, PARTNERSHIP STATUS, ALIENAGE OR CITIZENSHIP STATUS, LAWFUL OCCUPATION, LAWFUL SOURCE OF INCOME, OR BECAUSE CHILDREN MAY BE RESIDING WITH YOU.

If you believe that you are a victim of housing discrimination, you should dial 311 to reach the NYC Commission on Human Rights, or visit www.nyc.gov/cchr.




**MICHAEL R. BLOOMBERG,** Mayor
**PATRICIA L. GATLING,** Commissioner/Chair

18

**EXHIBIT D**



**EQUAL HOUSING
OPPORTUNITY**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RYAN HOFFMASTER,

                Plaintiff,

    v.

RENAISSANCE EQUITY HOLDINGS LLC,

                Defendant.

Case No. 16 Civ. 01934 (BMC)(VMS)

**STIPULATION AND ORDER OF
DISMISSAL WITH PREJUDICE**

WHEREAS, Plaintiff and Defendant, through their undersigned counsel, stipulate and agree as follows:

1.    This action is hereby dismissed with prejudice, pursuant to the terms of the Settlement Agreement and Order signed by the Court on _____, 2016.

2.    The Court shall retain jurisdiction over this action during the Term of the Settlement Agreement and Order for the sole purpose of enforcing compliance with the terms of the Settlement Agreement and Order.

3.    A facsimile or scanned copy of this stipulation will be considered the same as an original and may be filed with the court electronically or by facsimile transmission.

Dated: _____, 2016
     New York, NY

*[signature page to follow]*

EMERY CELLI BRINCKERHOFF &
   ABADY LLP

By: _____
     DIANE L. HOUK
     600 Fifth Avenue, 10th Floor
     New York, New York 10020

HOUSING WORKS, INC

By: _____
     ARMEN H. MERJIAN
     GEOFFREY WERTIME
     81 Willoughby Street, 5th Floor
     Brooklyn, NY  11201

*Attorneys for Plaintiff*

GIBSON, DUNN & CRUTCHER LLP

By: _____
     RANDY M. MASTRO
     JENNIFER H. REARDEN
     GABRIEL HERRMANN
     200 Park Avenue
     New York, NY 10166

*Attorneys for Defendant*

It is so ORDERED this _____ day of _____ 2016.

_____
HON. BRIAN M. COGAN
UNITED STATES DISTRICT JUDGE